**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**CURTIS GIOVANNI FLOWERS**                                                                           **PLAINTIFF**

**VS.**                                                        **CIVIL ACTION NO. 4:21-CV-110-NBB-JMV**

**DOUG EVANS, in his individual capacity,
JOHN JOHNSON, in his individual capacity,
WAYNE MILLER, in his individual capacity,
and JACK MATTHEWS, in his individual
capacity**                                                                                               **DEFENDANTS**

**DISTRICT ATTORNEY DOUG EVANS'S MEMORANDUM
OF AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

This Court should grant District Attorney Doug Evans's motion to dismiss for failure to state a claim upon which relief can be granted. As a prosecutor whose challenged actions were intimately associated with the judicial phase of the criminal process, District Attorney Evans is entitled to absolute prosecutorial immunity for all federal and state law claims against him in this matter. In addition, the state law claims are barred by the Mississippi Tort Claims Act, wrongful conviction statute, and applicable statutes of limitations, and they are insufficiently plead to survive dismissal. Therefore, even if the Plaintiff proves all allegations set forth in the Complaint, he will be prohibited from bringing his claims against District Attorney Evans to court.

## I. INTRODUCTION

Plaintiff Curtis Giovanni Flowers (hereinafter "Plaintiff") has brought this action against District Attorney Doug Evans and investigators John Johnson, Wayne Miller, and Jack Matthews in their individual capacities (hereinafter "Defendants") asserting claims under 42 U.S.C. § 1983

1

and state law arising out of his convictions and sentences for the 1996 murders of four people in Winona, Mississippi. According to the Complaint, Doc. 1, the Defendants caused the Plaintiff to be wrongfully incarcerated for twenty-three years through their purported misconduct during the investigation and prosecution of the Plaintiff. As a result, the Plaintiff maintains that the Defendants violated his rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 3, Sections 14, 23, and 26 of the Mississippi Constitution. The Plaintiff also asserts state law tort claims for malicious prosecution, abuse of process, and false imprisonment. The Plaintiff asks this Court for an award of compensatory and punitive damages, attorneys' fees, and costs.

Specifically as to District Attorney Evans, the Plaintiff acknowledges that some of District Attorney Evans's alleged misconduct occurred in his role as a prosecutor, but the Plaintiff maintains that "much of the misconduct occurred in his role as an investigator working in conjunction with the other three defendants." Doc. 1 at ¶ 54. Contrary to the Plaintiff's characterization, all of the acts and omissions alleged against District Attorney Evans in the Complaint fall within the scope of his prosecutorial functions. Because the allegations in the Complaint do not demonstrate that District Attorney Evans exceeded his role as prosecutor in this matter, he is entitled to dismissal of all claims against him based on his prosecutorial immunity from suit under federal and state law.

District Attorney Evans respectfully requests that the Plaintiff's state law claims be dismissed if all of his federal claims are dismissed. *See Astoria Entertainment, Inc. v. Edwards*, 57 Fed. Appx. 211 (5th Cir. 2003) ("When a matter is still in the pleadings stages of litigation, the general rule is to dismiss pendant state claims if all the federal claims are dismissed.").

Additionally, the Plaintiff's state law claims are barred by the Mississippi Tort Claims Act, the wrongful conviction statute, the applicable statutes of limitations, and the Plaintiff's failure to sufficiently plead necessary elements of his claims. Therefore, District Attorney Evans respectfully moves this Court for an order of dismissal in his favor on all claims against him in this matter.

## II. ARGUMENT

### A. Standard for Dismissal

District Attorney Evans vehemently denies the allegations of misconduct made against him in the Plaintiff's Complaint. However, he recognizes that for purposes of this motion to dismiss, "the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). A cause of action may be dismissed under Fed. R. Civ. P. 12(b)(6) "if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Baton Rouge Bldg. & Const. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). A complaint barred by an affirmative defense, such as prosecutorial immunity or the statute of limitations, may be properly dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Mowbray v. Cameron Cnty., Tex.*, 274 F.3d 269, 276 (5th Cir. 2001) (applying 12(b)(6) standard to motion to dismiss based on prosecutorial immunity); *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("a complaint that shows relief to be barred by an affirmative defense, such as the statute of limitations, may be dismissed for failure to state a cause of action").

Moreover, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

### B. District Attorney Evans is Entitled to Dismissal of All Claims Against Him Based on His Prosecutorial Immunity from Suit.

Because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action," *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985), courts should address the issue of prosecutorial immunity at the earliest possible point in litigation. *Siegert v. Gilley,* 500 U.S. 226, 231 (1991); *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). The actions by District Attorney Evans of which the Plaintiff complains are all firmly within the limits of the prosecutorial function protected by absolute immunity. As a result, District Attorney Evans petitions this Court to dismiss all claims against him in this matter.

Important public policy considerations have led the courts to conclude that prosecutors must be shielded by absolute immunity from civil liability for actions taken in initiating a prosecution and presenting the case for trial. *Imbler v. Pachtman*, 424 U.S. 409, 423-31 (1976). "The office of public prosecutor is one which must be administered with courage and independence." *Id.* at 423 (quoting *Pearson v. Reed*, 44 P.2d 592, 597 (Cal. 1935)). If a prosecutor were denied absolute immunity from civil suit, the mere threat of such litigation

would "cause a deflection of the prosecutor's energies from his public duties" and lead him to "shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* The threats to the public good that would result from a lack of prosecutorial immunity include not only the diversion of a prosecutor's time and energy away from enforcing the law, but also the potential for prosecutors to make decisions based on fear of personal liability instead of the pursuit of justice. *Id.* at 424-27. As a result, prosecutors are shielded by absolute immunity for challenged activities that are an "integral part of the judicial process," or "intimately associated with the judicial phase of the criminal process," including the initiation of prosecution and presenting the State's case. *Id.* at 430-31. Moreover, even when a prosecutor engages in "administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," he is still entitled to qualified immunity. *Wooten v. Roach*, 964 F.3d 395, 407 (5th Cir. 2020) (quoting *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016)).

The justifications for immunizing prosecutors for their prosecutorial acts are substantively similar to those advanced to justify judicial immunity. *See Imbler*, 424 U.S. at 422-23 ("The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grand jurors acting within the scope of their duties."). Prosecutors and their immunity are functionally comparable to that of judges and, therefore, have been referred to as "quasi-judicial" in nature. *Butz v. Economou*, 438 U.S. 478, 512 (1978) (citing *Imbler*, 424 U.S. at 423 n. 20). Mississippi has recognized the doctrine of judicial immunity for more than a century. *Wheeler v. Stewart*, 798 So.2d 386, 392 (Miss. 2001). Mississippi courts have extended immunity to officials other than judges, such as court

5

clerks, when "their judgments are 'functionally comparable' to those of judges – that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Newton Cnty. v. State ex rel. Dukes*, 133 So.3d 819, 826 (Miss. Ct. App. 2013) (reversed in part on other grounds, 133 So.3d 805 (Miss. 2014) (quoting *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 436 (1993) (quoting *Imbler,* 424 U.S. at 423 n. 20)).

Moreover, the Mississippi Legislature has decreed that governmental employees "acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of a legislative or judicial action or inaction . . . ." Miss. Code Ann. § 11-46-9(1)(a). This immunity for judicial action applies to Mississippi's district attorneys acting in the course and scope of their duties as prosecutors. *See Burnett v. Pearl River Basin Narcotics Task Force*, Civil Action No. 2:10cv267KS–MTP, 2011 WL 4036688, *6-7 (S.D. Miss. Sept. 12, 2011) (holding district attorney immune from speedy trial tort claim for failure to present his case to the grand jury); *Stewart v. District Attorney for Eighteenth Circuit Court Dist.,* 923 So.2d 1017, 1023-24 (Miss. Ct. App. 2005) (affirming grant of immunity to assistant district attorney for providing individuals' names and social security numbers from indictments to police so that they might be apprehended). Mississippi courts look to federal law to analyze the scope of judicial action under § 11-46-9(1)(a). *See Newton Cnty.*, 133 So.3d at 826. Thus, District Attorney Evans is entitled to immunity from the Plaintiff's state law tort claims based on the same functional approach analysis demonstrating that the Plaintiff's federal claims against District Attorney Evans are barred by his prosecutorial immunity. *See id.* at 828-29 (applying the "functional approach" to determine that circuit court clerk's approval of a bond was "integral to the judicial process" such that he was entitled to absolute judicial immunity).

6

The actions by District Attorney Evans outlined in the Complaint in this case were "intimately associated with the judicial phase of the criminal process" and thus entitle him to dismissal pursuant to his prosecutorial immunity. Generally speaking, a prosecutor is absolutely immune from suit whenever he acts in his role as advocate for the state. *Spec's Family Partners, Ltd. v. Nettles,* 972 F. 3d 671, 679 (5th Cir. 2020); *Morgan v. Chapman,* 969 F. 3d 238, 244 (5th Cir. 2020); *Spivey v. Robertson*, 197 F.3d 772, 775 (5th Cir. 1999). Prosecutors are thus entitled to absolute immunity for their acts in initiating criminal proceedings and carrying the case through the judicial process. *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *Brandley v. Keeshan*, 64 F.3d 196, 201 (5th Cir. 1995) (abrogated on other grounds by *Wallace v. Kato*, 549 U.S. 384, 397 (2007)).  Evaluating evidence and preparing it for presentation to the court are prosecutorial functions for which immunity is afforded. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  This is particularly true where, as here, the conduct occurs after the decision to seek an indictment has occurred. *Id.* Although a prosecutor may not be afforded absolute immunity for an action of an investigatory or administrative nature, if such action "require[s] legal knowledge and the exercise of related discretion" then prosecutorial immunity still applies. *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018) (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009)).

A significant portion of the Plaintiff's Complaint addresses alleged prosecutorial misconduct by District Attorney Evans during the Plaintiff's six trials, including the violations of *Batson v. Kentucky*, 476 U.S. 79 (1986), which resulted in reversal of the Plaintiff's convictions and sentences by the United States Supreme Court and the Mississippi Supreme Court.  Doc. 1 at ¶¶ 33-50.  None of these allegations are sufficient to overcome District Attorney Evans's

prosecutorial immunity. "Wilful or malicious prosecutorial misconduct is egregious by definition, yet prosecutors are absolutely immune from liability for such conduct if it occurs in the exercise of their advocatory function." *Cousin v. Small*, 325 F.3d 627, 635 (5th Cir. 2003). Moreover, "[t]he prosecutor's immunity is not stripped even if he acted maliciously or in excess of his authority." *Collins v. New Orleans Police Dep't*, 247 F.3d 240 (5th Cir. 2001); *Imbler*, 424 U.S. at 427-28. Because District Attorney Evans clearly acted within his role as prosecutor during his presentation of the State's case at the Plaintiff's trials, these allegations are classic examples of prosecutorial conduct protected by absolute immunity.

The other actions by District Attorney Evans described in the Complaint also fall under the umbrella of prosecutorial immunity. The Plaintiff focuses on two particular types of purported misconduct by District Attorney Evans which he contends were investigative, rather than prosecutorial, in nature. The first category is actions demonstrating a failure to adequately investigate alternative suspects and leads, while pursuing the prosecution of the Plaintiff despite contrary evidence. Doc. 1 at ¶¶ 4-8, 10, 25-32, 54, 83-105. The allegations against District Attorney Evans specifically are that he: 1) falsely claimed over the years that there were no suspects other than the Plaintiff (Doc. 1 at ¶ 6); 2) was "deeply involved in," "coordinated," was fully informed, and "maintained centralized control" over the investigation (Doc. 1 at ¶¶ 12, 20-21); 3) "engineered" the investigation to implicate the Plaintiff despite evidence to the contrary (Doc. 1 at ¶¶ 8, 32); and 4) may have failed to send the gun recovered from a home near the murder scene to the crime lab for testing (Doc. 1 at ¶¶ 101-03). The remaining allegations in this category of purported misconduct are directed to the Defendants collectively, so it is unclear what District Attorney Evans is accused of doing or failing to do, if anything. The Plaintiff

8

generally contends that the Defendants failed to conduct an in-depth investigation of other suspects (Doc. 1 at ¶¶ 8, 83-99); never explored a connection between the break-in at the murder scene eight days before the murders (Doc. 1 at ¶ 28); and failed to test the recovered gun (Doc. 1 at ¶¶ 54, 101-03).[1]

Assessing these allegations against District Attorney Evans under relevant case law, he is entitled to prosecutorial immunity. The United States Supreme Court in *Imbler* held that a prosecutor is entitled to absolute immunity even if he "deliberately withheld exculpatory information, or failed to make full disclosure of all facts casting doubt upon the state's testimony." *Prince v. Wallace*, 568 F.2d 1176, 1178-79 (5th Cir. 1978) (citing *Imbler*, *supra*). Similarly, the Fifth Circuit has held that suppressing exculpatory evidence is a prosecutorial action that "unquestionably fall[s] within the band of prosecutorial immunity." *Henzel v. Gerstein*, 608 F.2d 654, 657 (5th Cir 1979). Further, a prosecutor is absolutely immune "for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding) . . . ." *Burns v. Reed*, 500 U.S. 478, 489–90 (1991). Failing to disclose exculpatory evidence and other information concerning witnesses, procuring false testimony, and failing to correct perjured testimony, as well as "covering up" those allegedly unconstitutional actions are "clearly within the scope of immunity contemplated by the

---

[1] The Plaintiff also alleges that the Defendants used an unduly suggestive photo lineup to persuade a witness to incriminate the Plaintiff. Doc. 1 at ¶ 54, 100. However, the Complaint clearly states that Defendants Johnson and Miller conducted the photo lineup, not District Attorney Evans. Doc. 1 at ¶ 100. Moreover, the Mississippi Supreme Court has previously rejected the Plaintiff's arguments on this point, holding that the photo lineup was not impermissibly suggestive. *Flowers v. State*, 158 So.3d 1009, 1027-29 (Miss. 2014) (vacated and remanded on other grounds by *Flowers v. Mississippi*, 136 S.Ct. 2157 (2016)); *Flowers v. State*, 240 So.3d 1082, 1098-99 (Miss. 2017) (vacated on other grounds by *Flowers v. Mississippi*, 139 S.Ct. 2228 (2019)).

Supreme Court in *Imbler*." *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986). As a result, District Attorney Evans is entitled to prosecutorial immunity for allegedly failing to disclose that there were suspects other than the Plaintiff, falsely stating that the Plaintiff was the only suspect, or withholding any evidence related to other potential suspects or alternative theories.

District Attorney Evans is also entitled to immunity for his alleged failure to adequately investigate the case. The Fifth Circuit has held that a prosecutor is immune for the alleged failure to investigate prior to filing an information. *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979). Similarly, the Third Circuit has held that "instituting grand jury proceedings without investigation and without a good faith belief that any wrongdoing had occurred . . . are encompassed by the immunity doctrine as 'intimately associated with the judicial phase of the criminal process.'" *Rose v. Bartle*, 871 F.2d 331, 347 (3rd Cir. 1989). Likewise, the Tenth Circuit has found prosecutorial immunity for failure to fully investigate, reliance on records the prosecutor knew or should have known had been unlawfully obtained, and efforts to suppress evidence. *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000). In fact, "prosecutors are absolutely immune from liability for allegedly failing to conduct an adequate, independent investigation of matters referred to them for prosecution." *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1490 (10th Cir. 1991).

"Courts uniformly have held that a prosecutor is immune from liability for failure to adequately investigate the accusations against a defendant before charging him or her." *Dick v. Watonwan Cnty.*, 551 F. Supp. 983, 992 (D. Minn. 1982) (citing *Henzel,* 608 F.2d at 657; *Halpern v. City of New Haven,* 489 F.Supp. 841, 843 (D. Conn. 1980); *Hall v. Flathead Cnty. Attorney,* 478 F.Supp. 644, 645 (D. Mont. 1979)). Other courts similarly have held that

10

"claims based on an alleged failure to investigate come within the absolute immunity afforded by *Imbler*." *Marczeski v. Handy*, 213 F. Supp. 2d 135, 141 (D. Conn. 2002) (citing *Trammell v. Coombe*, No. 95 Civ. 1145(LAP), 1996 WL 601704, *3 (S.D. N.Y. Oct. 18, 1996); *Woolfolk v. Thomas*, 725 F.Supp. 1281, 1283 (N.D. N.Y.1989)); *Watson v. Bush*, No. 09-CV-1871, 2010 WL 1582228, *5 (N.D. Ill. Apr. 20, 2010) ("Other district courts similarly have concluded that prosecutors are entitled to absolute immunity for claims premised on a failure to investigate").

An "alleged failure to investigate could most aptly be described as an *evaluation* of the evidence" for which a prosecutor is absolutely immune. *Woolfolk*, 725 F. Supp. at 1283 (citing *Imbler*, 424 U.S. at 431 n. 33; *Barbera v. Smith*, 836 F.2d 96 (2nd Cir. 1987)). Allegations that a prosecutor failed to investigate evidence contrary to the state's case "are nothing more than a challenge to the Prosecutors' 'professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial,' acts for which they are absolutely immune." *Morales v. City of New York*, 59 F. Supp. 3d 573, 579 (S.D. N.Y. 2014) (quoting *Buckley*, 509 U.S. at 273). Although active investigative actions may not be entitled to absolute immunity, "[b]y contrast, a prosecutor's decision not to investigate is tantamount to a decision not to prosecute." *Woolfolk*, 725 F. Supp. at 1283. Providing absolute immunity for the decision not to prosecute and only qualified immunity for failure to investigate would allow a plaintiff to circumvent the prosecutorial immunity defense by simply pleading lack of adequate investigation. *Id*. Therefore, such allegations of "investigative wrongdoing" should be afforded absolute prosecutorial immunity. *Id.*

The case of *Wooten v. Roach*, 964 F.3d 395 (5th Cir. 2020) also is instructive on the allegations related to the purported shortcomings of the Flowers investigation. In *Wooten*, the

11

plaintiff filed suit against state and local officials for allegedly violating her constitutional rights by investigating and prosecuting her in retaliation for unseating an incumbent judge and making rulings they disagreed with. *Id*. at 398. She charged that the district attorney violated her civil rights based on his "supervision of, and failure to intervene in" his office's investigation of her. *Id*. at 410. She did not allege that the district attorney was personally involved in the investigation, but instead that he acted in a supervisory role, "was generally aware of the investigations," was the policy maker, and conspired to wrongfully arrest and prosecute her for political reasons. *Id*. The Fifth Circuit held that the allegations amounted to administrative obligations connected with the conduct of a trial, or arrests and prosecutions connected to the judicial process. *Id*. (citing *Van de Kamp*, 555 U.S. at 344; *Imbler*, 424 U.S. at 431). As a result, the court concluded that the district attorney's connection to the investigation was protected by his prosecutorial immunity. *Id*.

Here, the conclusory allegations against District Attorney Evans are that he was "deeply involved in," "coordinated," was fully informed, "maintained centralized control" over, and "engineered" the investigation of the Plaintiff. Doc. 1 at ¶¶ 8, 12, 20-21, 32. However, there are no specific allegations demonstrating that District Attorney Evans was directly and personally involved in the failure to conduct an in-depth investigation of other suspects, follow up on leads such as the previous break-in at the murder scene, or test the recovered gun. The Court is not obligated to accept as true the threadbare, conclusory allegations that District Attorney Evans was personally involved in the investigation. *Ashcroft*, 556 U.S. at 678. "The mere invocation of the catch-word 'investigatory' . . . cannot suffice . . . to forestall dismissal on immunity grounds." *Rose v. Bartle*, 871 F.2d 331, 345 (3rd Cir. 1989). District Attorney Evans's own

description of the investigation quoted by the Plaintiff in his Complaint clarifies that District Attorney Evans's role was in compiling the evidence collected by other investigative agencies:

> The way this case worked, every agency that was working on it, did different parts. They complied [sic] one file at our office with everything that everybody worked on. Everything that was involved with any agency, police department, sheriff's department, MDI, crime lab, all of it was in our file. So everything that they have would be in our file.

Doc. 1 at ¶ 21. As a result, District Attorney Evans's actions connected to the investigation, as depicted in the Complaint, are more akin to those of the district attorney in *Wooten*, and he similarly should be afforded prosecutorial immunity.

Had District Attorney Evans taken a more active role in the investigation to personally investigate other suspects, explore connections with the previous break-in, test the gun, or correct any other supposedly inadequate investigatory task, he would have taken steps beyond his role as prosecutor and shed his cloak of immunity. *See Woolfolk*, 725 F. Supp. at 1283 ("authorizing wiretaps, or assisting in the execution of a search and seizure are active investigative actions not entitled to absolute immunity") (citing *Barbera*, 836 F.2d at 100 and citing cases). However, District Attorney Evans should not be held accountable for the allegedly inadequate investigation of other suspects or leads while he was actively pursuing his case against the Plaintiff. *See Buckley*, 509 U.S. at 273 ("acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity"). This Court should reject the Plaintiff's theory and conclusory allegations that District Attorney Evans stepped outside his role of prosecutor by failing to adequately investigate the case.

13

The second category of actions the Plaintiff argues fall outside of District Attorney Evans's role as prosecutor involves pressuring witnesses to tailor their testimony to fit the State's theory of the case or completely fabricating testimony. Doc. 1 at ¶¶ 9, 54-82, 105. The alleged conduct specific to District Attorney Evans is that he worked with Defendant Johnson to persuade Odell Hallmon to fabricate his testimony at the last four trials that the Plaintiff confessed to committing the murders. Doc. 1 at ¶¶ 55-57, 61. The Plaintiff also claims that District Attorney Evans prompted Hallmon to falsely claim he was not testifying in exchange for any benefit, such as leniency for crimes Hallmon committed. Doc. 1 at ¶¶ 58-60, 62.

As to the other witnesses who were allegedly pressured or coerced into providing false testimony against him, the Plaintiff contends that District Attorney Evans knowingly allowed Clemmie Fleming to falsely testify that she saw the Plaintiff running away from the scene on the morning of the murders. Doc. 1 at ¶ 67. The Plaintiff claims that Fleming in fact did not remember which day she saw the Plaintiff but was pressured by Defendant Johnson to say she saw the Plaintiff specifically on the day of the murders. Doc. 1 at ¶¶ 65-67. The Plaintiff also asserts that District Attorney Evans knew that Defendant Johnson pressured Ed McChristian to falsely testify that he saw the Plaintiff on the day of the murders when he actually could not remember what day that summer he saw the Plaintiff. Doc. 1 at ¶¶ 70-74. The Plaintiff does not contend that District Attorney Evans engaged in pressuring or coercing these witnesses, but that he did allow them to testify knowing that their testimony was supposedly fabricated. The Plaintiff also complains that District Attorney Evans produced witnesses with conflicting or inconsistent testimony related to the Plaintiff's location on the morning of the crime. Doc. 1 at ¶¶ 76-82.

14

Even accepting these allegations as true for purposes of this motion, District Attorney Evans is protected from liability by his prosecutorial immunity from suit. A prosecutor's "effort to control the presentation of his witness' testimony" is entitled to absolute immunity because it is "a task fairly within his function as an advocate." *Imbler*, 424 U.S. at 430, n.32. Further, a prosecutor is absolutely immune "for eliciting false and defamatory testimony from witnesses." *Burns*, 500 U.S. at 489–90 (1991). "[T]he presentment of false, coerced and fabricated testimony" implicates prosecutorial immunity because it is done in the prosecutor's integral role as advocate for the state. *Kerr v. Lyford*, 171 F.3d 330, 338 (5th Cir. 1999) (abrogated on other grounds by *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)). Presentation of perjured testimony falls within the prosecutorial role and is protected by his absolute immunity. *McCoy v. Gordon*, 709 F.2d 1060, 1062 (5th Cir. 1983) (disapproved of in part on other grounds in *Augustine v. Doe,* 740 F.2d 322, 328 n.10 (1984)). *See also Henzel*, 608 F.2d at 657 (offering perjured testimony "unquestionably fall[s] within the band of prosecutorial immunity"); *Beckett v. Ford*, 384 Fed. Appx. 435, 451 (6th Cir. 2010) (affording immunity to prosecutor who pressured, threatened, and enticed witnesses to lie at the plaintiff's trial, presented false testimony at that trial, failed to disclose a deal with one of those witnesses, and conspired to frame the plaintiff for murder). The Plaintiff's claims that District Attorney Evans knowingly allowed witnesses to falsely testify after being pressured or coerced by Defendant Johnson, or that he otherwise used inaccurate or inconsistent testimony, is protected by prosecutorial immunity.

As for the allegations regarding District Attorney Evans's participation in securing Hallmon's testimony, the Fifth Circuit's opinion in *Cousin v. Small*, 325 F.3d 627 (5th Cir. 2003)

15

is directly on point. In *Cousin*, the plaintiff was convicted of murder and served time on death row before his conviction was overturned for prosecutorial misconduct. *Id*. at 629-30. He subsequently filed suit under § 1983 and alleged that prosecutors violated his rights by coercing and intimidating a witness to give false testimony implicating him in the murder. *Id*. at 632. In holding the prosecutors immune from suit, the Fifth Circuit reviewed the Supreme Court's opinion in *Buckley v. Fitzsimmons*, *supra*, and found that its "necessary implication is that after probable cause has been established, it is more likely that the prosecutor acts as an advocate." *Id*. at 633.

> Although *Buckley* did not explicitly hold that all witness interviews conducted after indictment are advocatory in nature, the Court's reasoning strongly indicates that many, perhaps most, such interviews are likely to be advocatory rather than investigative.

*Id*. The Fifth Circuit reasoned that the key inquiry in deciding the immunity question was whether the plaintiff was already a suspect when the witness was interviewed and if the interview was related to anticipated trial testimony. *Id*. The witness's declaration established that the plaintiff was already the target of the murder investigation when he met with the prosecutor, and that they discussed how he should testify at trial. *Id*. at 634. The prosecutor told the witness to emphasize that the plaintiff bragged about committing the murder, and they practiced his testimony by going over the questions and the answers he should give at trial. *Id*. The prosecutor also instructed the witness to lie "on a number of points" including whether he had a deal with the State. *Id*. The court concluded that the prosecutor was acting as an advocate instead of an investigator because the intent was to secure evidence to be used at trial on behalf of the State against an already identified suspect, rather than to identify a suspect or establish probable cause. *Id*. at 635.

16

The allegations against District Attorney Evans here that he persuaded Hallmon to fabricate his testimony that the Plaintiff confessed to the murders are indistinguishable from the set of facts in *Cousin*. At the time District Attorney Evans and Defendant Johnson contacted Hallmon purportedly to change his testimony, the Plaintiff was not only already identified as a suspect, he had been indicted and been twice tried. Doc. 1 at ¶ 55-56. Like the prosecutor in *Cousin*, the Plaintiff accuses District Attorney Evans of persuading Hallmon to falsely testify against the Plaintiff in exchange for leniency with respect to criminal charges against Hallmon. Doc. 1 at ¶¶ 55-62. The Plaintiff also similarly contends that District Attorney Evans prompted Hallmon to falsely claim he did not testify in exchange for any benefits. Doc. 1 at ¶ 58. The Plaintiff's own depiction of District Attorney Evans's conduct – that the Defendants pressured witnesses "to tailor their testimony to fit" the state's theory of the case – supports a finding that District Attorney Evans was performing the alleged acts in his role as a zealous advocate for the state. (Doc. 1 at ¶ 9). Like the prosecutor in *Cousin*, District Attorney Evans's conversations with Hallmon occurred after the Plaintiff was identified as a suspect and for the purpose of securing Hallmon's testimony against the Plaintiff at trial. So long as the alleged threats, coercion, or enticement used to elicit false testimony were done as part of the effort to secure a conviction at trial, the prosecutor acted as an advocate and is entitled to prosecutorial immunity. *Beckett v. Ford*, 384 Fed. Appx. 435, 451 (5th Cir. 2010). As a result, District Attorney Evans is absolutely immune for his purported conduct related to the testimony of Hallmon in this case.

Neither malicious intent in instituting a prosecution, *Brummet v. Camble*, 946 F.2d 1178, 1181 (5th Cir. 1981), nor willful suppression of exculpatory material, *Imbler*, 424 U.S. at 430-31, n. 34, nor even conspiracy to predetermine the outcome of a proceeding, *Boyd*, 31 F.3d at 285,

can pierce the shield of absolute immunity. The allegations against District Attorney Evans in the Plaintiff's Complaint demonstrate that District Attorney Evans acted in his role as an advocate in furtherance of his prosecutorial duties, not as an investigator. Therefore, he respectfully requests this Court to dismiss the claims against him in this matter based on his prosecutorial immunity from suit.

### C. The Plaintiff's Mississippi Constitutional Claims are Barred by the Mississippi Tort Claims Act and the Wrongful Conviction Statute.

As this Court has recognized, "the Mississippi Constitution does not provide a direct cause of action." *Minor v. Miss. Dep't of Pub. Safety*, Civil Action No. 3:19CV155-NBB-RP, 2020 WL 1877798, *3 (N.D. Miss. Apr. 15, 2020) (citing *City of Jackson v. Sutton*, 797 So. 2d 977, 981 (Miss. 2001)). In *Sutton*, the Mississippi Supreme Court held that the exclusive remedy for a monetary damage claim against a governmental entity and its employees for a purported violation of the Mississippi Constitution is under the Mississippi Tort Claims Act ("MTCA"). *Sutton*, 797 So.2d at 980. Where, as here, the plaintiff chooses not to follow the MTCA, his state constitutional claims are not cognizable. *See id*. (holding the trial court erred in failing to award summary judgment to the governmental defendants for alleged violation of Section 14 of the Mississippi Constitution because the plaintiff failed to make a timely claim under the MTCA).

Even if the Plaintiff chose to pursue his claims under the Mississippi Constitution pursuant to the MTCA, they would be barred by Miss. Code Ann. § 11-44-7(4). The Mississippi Legislature has provided for compensation to victims of wrongful conviction and imprisonment through enactment of Section 11-44-1 et seq. of the Mississippi Code Annotated. Section 11-44-7(4) of that chapter provides:

> A claimant may choose to pursue a claim under this chapter in lieu of pursuing a claim against the State of Mississippi or a political subdivision thereof under the Mississippi Tort Claims Act, Section 11-46-1 et seq., Mississippi Code of 1972. Any claimant who obtains an award under this chapter may not obtain an award by reason of the same subject against the State of Mississippi or a political subdivision thereof under the provisions of the Mississippi Tort Claims Act, Section 11-46-1 et seq., Mississippi Code of 1972.

Miss. Code Ann. § 11-44-7(4). In his Complaint, the Plaintiff acknowledges that he already received the maximum compensation available under the wrongful conviction statute. Doc. 1 at ¶ 53. As a result, he may not seek double recovery by pursuing a second claim under the MTCA.

### D. The Plaintiff's State Law Tort Claims are Subject to Dismissal.

The Mississippi Tort Claims Act ("MTCA") provides the exclusive remedy for any claim based in tort against a governmental entity and its employees. Miss. Code. Ann. § 11-46-7. The MTCA, however, does not apply to claims against government employees acting outside the course and scope of their employment. Miss. Code Ann. § 11-46-5(1) and (2). For purposes of the MTCA, an employee does not act within the course and scope of his employment "if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Miss. Code. Ann. § 11-46-5(2). Therefore, the MTCA does not apply to claims requiring proof of one of these intentional torts. *Zumwalt v. Jones Cnty. Bd. of Sup'rs*, 19 So.3d 672, 688 (Miss. 2009). On the other hand, torts that do not require proof of fraud, malice, libel, slander, or defamation are subject to the MTCA and its requirements. *Id*. at 689.

#### 1. False Imprisonment

The tort of false imprisonment does not include fraud, malice, libel, slander, or defamation as a necessary element. Such a claim merely requires proof of the imprisonment and

19

the falsity thereof. *Parker v. Miss. Game & Fish Comm'n*, 555 So.2d 725, 728 (Miss. 1989). The Plaintiff's false imprisonment claim, therefore, is governed by the MTCA. As discussed above, the Plaintiff's recovery under Mississippi's wrongful conviction statute bars him from seeking damages under the MTCA. Miss. Code Ann. § 11-44-7(4). Thus, his false imprisonment claim cannot be sustained.

In addition, to maintain a tort action under the MTCA against a Mississippi government entity, a plaintiff must "file a notice of claim with the chief executive officer of the governmental entity" ninety days before filing suit. Miss. Code Ann. § 11-46-11(1). "The Mississippi Supreme Court has held that the 'notice of claim requirement imposes a condition precedent on the right to maintain an action' and is a jurisdictional prerequisite." *Chestang v. Alcorn State Univ.*, 820 F.Supp.2d 772, 778 (S.D. Miss. 2011) (quoting *Gale v. Thomas*, 759 So.2d 1150, 1159 (Miss. 1999)). Here, the Plaintiff provided no such notice, so his state law false imprisonment claim fails.

Moreover, the Plaintiff cannot maintain his claim for false imprisonment because it is time barred. Actions brought under the MTCA must be filed within one year of the alleged actionable conduct. Miss. Code Ann. § 11-46-11(3)(a). Even if the Court finds that District Attorney Evans acted outside the course and scope of his employment, a claim for false imprisonment must be brought within one year after the cause of action accrues. Miss. Code Ann. § 15-1-35. Under Mississippi law, a cause of action for false imprisonment accrues on the date of arrest. *Parker*, 555 So.2d at 727. According to the Complaint, the Plaintiff was arrested in January 1997. Doc. 1 at ¶ 32. As a result, the one-year period of time for him to file a claim

for false imprisonment lapsed in January 1998. Because he waited until September 3, 2021, to file his Complaint, the Plaintiff's claim for false imprisonment is time barred.

### 2. Abuse of Process

The Plaintiff's claim for abuse of process is similarly untimely. It appears that malice may be a necessary element of abuse of process such that the MTCA would not apply. *See State for Use & Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975) (abuse of process "is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained"). *But see Blake v. Wilson*, 962 So.2d 705, 709-14 (Miss. Ct. App. 2007) (applying the MTCA to a variety of civil claims, including abuse of process). However, even assuming the general three-year statute of limitations in Miss. Code Ann. § 15-1-49 applies to the Plaintiff's claim for abuse of process, it is time barred.

"[A] cause of action for abuse of process has been generally held to accrue, and the statute of limitations to commence to run, from the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued." *Hyde Const. Co. v. Koehring Co.*, 321 F. Supp. 1193, 1207 (S.D. Miss. 1969) (quoting 1 A.L.R.3d 948, 953). "[T]he pertinent dates are the dates of the acts which constitute the abuse of process complained of" and not the date the action was terminated successfully. *Harried v. Forman Perry Watkins Krutz & Tardy*, 813 F.Supp.2d 835, 841 (S.D. Miss. 2011). At the latest, the Plaintiff's claim for abuse of process accrued when District Attorney Evans last prosecuted him, on or about June 18, 2010. *See* Doc. 1 at ¶ 45 (the jury found the Plaintiff guilty in his sixth trial on June 18, 2010); *Flowers*, 158 So.3d at 1025 (same). Because the Complaint was filed on September 3, 2021, more than eleven years after the cause of action accrued, the claim against District Attorney Evans for abuse of process should be dismissed.

22

In addition, the Plaintiff has failed to plead all necessary elements to proceed on his claim for abuse of process.

> It is generally recognized that the elements essential to sustain the action of abuse of process are: (1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity.

*State for Use & Benefit of Foster*, 319 So. 2d at 236. In this case, the Plaintiff has not alleged that District Attorney Evans had any ulterior motive or purpose in pursuing his prosecution. Ulterior motive may not be inferred merely from a failure to follow proper procedure. *Williamson ex rel. Williamson v. Keith*, 786 So.2d 390, 395 (Miss. 2001). *Id*. "The existence of improper procedure does not, by itself, give rise to an abuse of process claim." Moreover, "legitimate, natural consequences flowing from" the use of the process do not constitute ulterior motive." *Moon v. Condere Corp.*, 690 So. 2d 1191, 1197 (Miss. 1997). The Plaintiff's claim for abuse of process should be dismissed, because he has failed to plead the second element of the tort.

### 3. Malicious Prosecution

The Plaintiff's final state law tort claim for malicious prosecution should be dismissed for failure to state a claim. The six elements of malicious prosecution under Mississippi law are:

> (1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution.

*Univ. of Miss. Med. Ctr. v. Oliver*, 235 So.3d 75, 83 (Miss. 2017) (quoting *Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991)). Here, the Plaintiff's malicious prosecution claim fails on the elements of malice and lack of probable cause.

"'Malice' in the law of malicious prosecution is used in an artificial and legal sense and applied to a prosecution instituted primarily for purpose other than that of bringing an offender to justice." *Royal Oil Co., Inc. v. Wells*, 500 So. 2d 439, 444 (Miss. 1986) (citing *Owens v. Kroger Co.,* 430 So.2d 843 847 (Miss.1983)). For purposes of malicious prosecution, the element of "[m]alice does not refer to mean or evil intent, as a layman might ordinarily think." *Strong v. Nicholson*, 580 So.2d 1288, 1293 (Miss. 1991). Establishing malice is "a high bar," since "[m]alice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to tie up the mouths of witnesses in another action, or as an experiment to discover who might have committed the crime." *Oliver*, 235 So.3d at 83-84. (internal quotation marks and citations omitted). In his Complaint, the Plaintiff has asserted no such alternative purpose that District Attorney Evans might have had for prosecuting the Plaintiff other than the pursuit of justice. Therefore, he has failed to state a claim for malicious prosecution.

In addition, the Plaintiff has failed to sufficiently plead the element of want of probable cause. "When a *conviction* is obtained in a lower court prosecution, whether reversed or not, a prima facie case is made that probable cause is present, in the absence of fraud, perjury or other corrupt practices." *Royal Oil Co., Inc.*, 500 So. 2d at 443. Here, the Plaintiff was convicted in four separate trials. Doc. 1 at ¶¶ 35, 36, 40, 44. Although the convictions were reversed on

24

appeal, none of the opinions on appeal negated probable cause.[2]  Doc. 1 at ¶¶ 37, 38, 41, 46, 49. In fact, the Mississippi Supreme Court twice held that the evidence in the Plaintiff's last trial was sufficient to prove the elements of capital murder beyond a reasonable doubt.  *Flowers*, 158 So.3d at 1038-42; *Flowers*, 240 So.3d at 1109-13. "The question is whether, at the time of prosecution, "(1) an honest belief in the guilt of the person accused, and (2) reasonable grounds for such belief."  *Royal Oil Co., Inc.*, 500 So. 2d at 443.   Given that the  Mississippi Supreme Court found on direct appeal that there was sufficient evidence to support the Plaintiff's conviction, then District Attorney Evans should be afforded the defense of probable cause in response to the Plaintiff's malicious prosecution claim.  As a result, this Court should find that the Plaintiff has failed to sufficiently plead the necessary elements to state a claim and cannot proceed on his theory of malicious prosecution.

## III.  CONCLUSION

For all of the above and foregoing reasons, District Attorney Evans respectfully requests that this Court dismiss all of the claims against him in this matter.

THIS the 21st day of October, 2021.

---

[2] *Flowers v. State*, 773 So.2d 309 (Miss. 2000) (reversing and remanding to circuit court because evidence of all four murders was introduced when only one was being tried, and the prosecution improperly attempted to impeach witnesses without factual basis); *Flowers v. State*, 842 So.2d 531, 537 (Miss. 2003) (reversing and remanding to circuit court because evidence of all four murders was introduced when only one was being tried, prosecution improperly attempted to impeach witnesses without factual basis, prosecutor's closing argument lacked evidentiary foundation, and hearsay testimony of forensic microanalysis expert was inadmissible); *Flowers v. State*, 947 So.2d 910, 916 (Miss. 2007) (reversing and remanding to circuit court based on violation of *Batson*); *Flowers v. State*, 158 So.3d 1009 (Miss. 2014) (vacated and remanded to Mississippi Supreme Court for consideration in light of *Foster v. Chatman*, 578 U.S. 488 (2016) (interpreting *Batson*) by *Flowers v. Mississippi*, 136 S.Ct. 2157 (2016)); *Flowers v. State*, 240 So.3d 1082 (Miss. 2017) (vacated by *Flowers v. Mississippi*, 139 S.Ct. 2228 (2019) based on *Batson* violation).

Respectfully submitted,

DOUG EVANS, in his individual capacity,
Defendant

LYNN FITCH,
Attorney General of Mississippi

/s/ Mary Jo Woods_____
Mary Jo Woods (MSB #10468)
Gerald L. Kucia (MSB #8716)
Special Assistant Attorneys General
Post Office Box 220
Jackson, Mississippi  39205-0220
Telephone:  (601) 359-3680
Facsimile:  (601) 359-2003
Email: Gerald.Kucia@ago.ms.gov
        Mary.Woods@ago.ms.gov

26

## <u>CERTIFICATE OF SERVICE</u>

I, Mary Jo Woods, Special Assistant Attorney General and attorney for Defendant Doug Evans, do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF system, which sent notification of such filing to all counsel of record.

THIS the 21st day of October, 2021.

/s/ Mary Jo Woods_____
Mary Jo Woods

27